## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS


**SHAWN W. McDIFFETT,**

       **Plaintiff,**

       **v.**                                 **CASE NO. 17-3037-SAC-DJW**

**CHARLES NANCE, et al.,**

       **Defendants.**


### NOTICE AND ORDER TO SHOW CAUSE

Plaintiff Shawn McDiffett is hereby required to show good cause, in writing, to the Honorable Sam A. Crow, United States District Judge, why his claims against Defendants Christopher Hunt, CO Obeidat, Randy (lnu), Jane Doe, Dr. Saffo, UTM Wildermuth, and CO Redieck should not be dismissed due to the deficiencies in Plaintiff's Complaint that are discussed herein.

### I.   Nature of the Matter before the Court

Plaintiff brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983.  Although Plaintiff is currently incarcerated at the Hutchinson Correctional Facility in Hutchinson, Kansas ("HCF"), the events giving rise to his Complaint took place during his incarceration at the Lansing Correctional Facility in Lansing, Kansas ("LCF").  Plaintiff names as defendants:  Charles Nance, Unit Team Manager ("UTM") at LCF; Kent Saffo, M.D. employed by Corizon; Jennifer Kieltyka, ARNP/PA employed by Corizon; Lauren Gift, Corizon Clinic Administrator; Beverly Jackson, Corizon Nurse; Jane Doe, Corizon Nurse; Gaye Servino, Corizon Nurse; Barbara Redieck, Correctional Officer ("CO") at LCF; Randy (lnu), Aramark Food Service Supervisor; (fnu) Obeidat, CO at LCF; Irene Silva, CO at LCF; (fnu) Arol, CO at LCF; Christopher Hunt,

Disciplinary Hearing Officer ("DHO") at LCF; Eilene (lnu), Corizon Infirmary Nurse; and Lindsay Wildermuth, UTM at LCF Segregation and/or Restrictive Housing Unit. All Defendants are sued in their individual capacities.

Plaintiff filed a Complaint (Doc. 1), alleging the following. Around December 2013, while housed at HCF, Plaintiff was diagnosed with Chronic Obstructive Pulmonary Disease ("COPD") and an inguinal hernia. On April 14, 2014, Plaintiff was transferred to LCF and placed in an upper-level cell house. Plaintiff had to climb two flights of stairs, and then navigate another set of stairs to get to his second-tier cell. Plaintiff was later moved to a cell requiring him to climb three flights of stairs and then navigate another set of stairs to reach his second-tier cell. Plaintiff made complaints due to the pain caused by his hernia and his breathing problems. Because of limited bed space, Plaintiff was told to continue putting in sick calls. Plaintiff remained in this cell for eight months, causing his hernia to worsen to the point of foreclosing the possibility of reduction. It took nearly two month for Plaintiff to receive a hernia belt.

On January 24, 2015, Plaintiff was placed in segregation for refusing to lockdown until he received an inhaler. After Plaintiff explained his situation to the Segregation Review Board, he was released back to general population and placed on a lower level cell house. After only a few days in the lower level cell house, Plaintiff was ordered to move back to an upper level cell house. Plaintiff was issued a disciplinary report for his refusal to move to the upper cell house. When it was discovered that Plaintiff had a stair restriction, the disciplinary report was dismissed.

Plaintiff was transferred to the LCF medium facility in March 2015, and Defendant Silva asked Defendant Nance to house Plaintiff right in front of the office by the outside doors. This allowed pollen, dust and dirt from the outdoors to blow on Plaintiff's bunk area, causing Plaintiff to cough and sneeze, further aggravating his hernia and COPD. Plaintiff was not only exposed to

outside environmental conditions, but in addition Defendant Nance was having the ceiling, bath and shower area refurbished, causing dust and debris to enter the air. Defendant Silva also sprayed chemicals, including "deodorizer," throughout the cell house. Defendant Nance refused Plaintiff's requests to move to a different cell.

Around March 31, 2015, Plaintiff was removed from the medium facility when staff claimed he was in a state of altered conscious. When Plaintiff was placed in segregation, Defendant Wildermuth placed Plaintiff in a second tier cell, with a burnt and water-soaked mattress and glass on the floor. Once Plaintiff spoke to the Segregation Review Board Plaintiff was released back to general population and was transferred back to the medium facility around the first week in April. Defendant Silva put Plaintiff back in his same bunk.

Plaintiff had hernia surgery on April 9, 2015. Following surgery Plaintiff was taken to the LCF maximum facility infirmary, and was released the next morning—less than 24 hours after surgery—by Defendant Kieltyka, to return to the LCF medium facility. When Plaintiff asked for help returning to his cell at the LCF medium facility, Defendant Arol told Plaintiff to put his boxes of property on his wheelchair and push it so he would not have to carry it. Once Plaintiff reached the medium facility, Defendant Servino refused to give Plaintiff an aid to assist him. Plaintiff had to navigate an 85% incline when returning to the facility, and had to climb the same hill every time he went to eat, to activities, or to call outs.

Defendant Jackson failed to schedule Plaintiff's two-week follow up with his surgeon. Plaintiff did not see his surgeon until two months following his surgery, and only then because Plaintiff's mesh came loose and a reoccurring hernia appeared.

Around May 12, 2015, Plaintiff stopped to rest on a bench when he was returning from his evening meal. Plaintiff was issued a summary judgment citation for unauthorized presence.

Because Plaintiff refused to sign the citation, it was converted to a disciplinary report. Plaintiff had two hearings. He was found guilty at the first hearing, and was granted a second hearing after he appealed to the warden. The second hearing was before Defendant DHO Hunt. Plaintiff advised Defendant Hunt that he has COPD, had hernia surgery, and that his doctors told him to stop and rest when needed. Defendant Hunt found Plaintiff guilty and sanctioned Plaintiff with a $10 fine. Defendant Hunt stated that Plaintiff's medical profile did not give Plaintiff permission to be anywhere on the compound he wished, and if Plaintiff was having an issue he should have let someone know. Plaintiff appealed and the ruling was upheld.

Plaintiff weighed 178 pounds when he had his surgery on April 9, 2015. On May 19, 2015, he weighed only 148 pounds due to severe pain and the inability to keep food down. His Zofran medication that helped with his eating expired and Plaintiff tried to report to the clinic after submitting several sick calls. Plaintiff was turned away by Defendants Redieck and Servino, who told Plaintiff he needed to submit a sick call because it was not an emergency. Defendant Saffo was Plaintiff's assigned doctor, and Plaintiff alleges that Dr. Saffo would have been aware of Plaintiff's sick call requests, yet did nothing. Plaintiff complained to Defendant Gift about her subordinate nurses, but she took no corrective or remedial action. Plaintiff was forced to complain to the Captain's Office, which resulted in calls to Defendants Gift and Servino instructing them to let Plaintiff see Dr. Saffo. Dr. Saffo immediately admitted Plaintiff to the clinic infirmary. Plaintiff was classified as "sheltered" for bed rest and pain management, began a series of medications, and was scheduled to see his surgeon.

While in the infirmary, Defendant Eilene, a Corizon nurse, changed Plaintiff's doctor-prescribed Zofran and instead gave Plaintiff a shot that caused Plaintiff to suffer a reaction. On May 24, 2015, Plaintiff's Zofran was again allowed to expire and Plaintiff had to wait for it to

be reordered. When it was also discovered that "the nurse" gave Plaintiff a double dose of his medication, she told him that it wouldn't hurt him. On May 25, 2015, Plaintiff requested his medication at 2:30 p.m., and after three more requests, his medication was finally delivered after 4:00 p.m.

Plaintiff had a follow up with his surgeon on May 26, 2015. The surgeon suggested that Plaintiff talk to a psychiatrist because Plaintiff "was actually beginning to wonder if all this was just [him], if it were really happening, or if it [was] actually happening to everyone." After speaking to the psychiatrist, Plaintiff started taking a low dose of Doxepin for his stress, and Lisinopril for his high blood pressure.

On May 31, 2015, Plaintiff requested his medication at 5:30 a.m.—Tramadol for pain and Zofran to keep his food down—but the medication was not delivered until after breakfast. Nurse Eilene said that Plaintiff did not have an order for medication and had not been taking medication for days, even though Plaintiff had been receiving and taking his medication.

On June 1, 2015, Plaintiff decided to stop taking Doxepin due to the side effects. Plaintiff learned that he had not been taking the lowest dose as prescribed by the psychiatrist. Plaintiff discovered that Nurse Eilene had lied about his medication not being charted and about not having a record of Plaintiff taking his medications.

Plaintiff met with Dr. Saffo on June 2, 2015, and Dr. Saffo agreed with Plaintiff that neither Nurse Eilene nor Nurse Kieltyka should be changing Plaintiff's medications from what the doctor prescribed.

On June 2, 2015, Nurse Eilene brought Plaintiff his medication even though he had not requested it. Plaintiff had to ask a CO to make Nurse Eilene leave his cell because she was trying to make Plaintiff take the medication and "[h]er actions were so bizarre that [Plaintiff] did not ever

want [his] meds from her again." Several hours later Plaintiff requested his medications and Nurse Eilene showed up with the medications. Plaintiff refused to take the medication and had to leave his cell when she refused to leave.

On June 3, 2015, the results of an ultrasound performed at St. Lukes Hospital revealed that Plaintiff had a hernia at the same location as his previous hernia. When Plaintiff returned from the outside transport, Nurse Eilene accused Plaintiff of refusing to hand over paperwork when in fact he had no paperwork. After that, CO Obeidat searched Plaintiff's cell when Plaintiff left his cell for medication and a vitals check.

On June 5, 2015, Plaintiff advised Nurse Kieltyka that he still only weighed 147 pounds, to which she replied that he needed to eat more. Plaintiff continuously asked her to change his diet but she either did not do it or stated that the doctor had to do it. Plaintiff's diet was eventually changed to a high protein diet with no peanut butter, double portions and a snack sack at night. He received this new diet while in the clinic, but when he was released from the clinic Aramark Supervisor Randy (lnu) refused to provide the double portion meal diet to Plaintiff, stating that he did not have a record of such a restriction in his "book."

On June 5, 2015, Nurse Kieltyka refused to give Plaintiff a shot when his legs were cramping. Plaintiff requested calcium pills which he had previously taken at a different facility, but which Dr. Saffo had replaced with Vitamin B-6. Plaintiff quit taking the Vitamin B-6 because it did not work, and Plaintiff's request for calcium pills was denied.

On June 7, 2015, Plaintiff found out that his pain medication had expired the day before, and Nurse Kieltyka had failed to reorder the medication and changed Dr. Saffo's order without advising Plaintiff. On June 8, 2015, Nurse Kieltyka informed Plaintiff that the doctor's order for his pain medication was now correctly written and she apologized saying that she should not have

changed it in the first place.

On June 8, 2015, after Plaintiff had made two written requests to speak to Defendant Gift and Ms. Mendoza, Plaintiff asked two inmates to contact them and advise them that Plaintiff wished to speak with them. Both inmates made the requests, but neither Gift nor Mendoza showed up.

On June 10, 2015, Plaintiff had an incident with CO Obeidat, who was harassing Plaintiff and not letting Plaintiff out of his cell for dayroom. Defendant Obeidat verbally harassed Plaintiff to the point of Plaintiff "lashing out at him, ultimately ending with [Plaintiff] receiving a Disciplinary Report from him." Plaintiff alleges that the incident was retaliation for Plaintiff filing a grievance and complaints about the infirmary.

On June 10, 2015, Defendant Jane Doe released Plaintiff from the infirmary without Plaintiff seeing a doctor or advising Plaintiff of his medical status. Later Plaintiff was told that he was discharged from the infirmary because a nurse reported that he was exercising, and if he was fit enough to exercise he should not be housed in the infirmary. Plaintiff alleges he was merely stretching to alieve leg cramps.

Plaintiff finally received hernia mesh repair surgery on July 20, 2015. Plaintiff had a follow up with the surgeon two weeks after the surgery. The surgeon requested another follow up in two weeks, but Defendant Nurse Jackson told Plaintiff he did not need to go back for any additional follow ups.

Plaintiff seeks a declaratory judgment, compensatory damages, nominal damages and punitive damages.

Plaintiff alleges that: Defendants Dr. Saffo and Nurse Beverly Jackson violated his Eighth Amendment rights by failing to take action to get Plaintiff scheduled for a follow-up visit

with an outside surgeon after Plaintiff made numerous trips to the clinic complaining of serious

pain, dramatic weight loss, and an inability to keep food down; Defendants Nurse Jennifer

Kieltyka and Nurse Eilene committed medical malpractice by changing Plaintiff's medication

without prior doctor approval; Defendant Lauren Gift violated the Eighth Amendment by failing to

take corrective or remedial action after being informed of Plaintiff's medical condition;

Defendants Gaye Servino and Barbara Redieck denied Plaintiff access to sick call and a doctor,

and forced Plaintiff to push his property to his living unit right after surgery without an aid;

Defendant Charles Nance violated the Equal Protection Clause by refusing to move Plaintiff to a

living unit on the ground level after his surgery, and Defendant Gaye Servino lied to Nance about

Plaintiff's medical restrictions in violation of the Eighth Amendment; Defendant Nance violated

the Eighth Amendment by refusing to move Plaintiff away from a bunk in front of the living unit

front doors after being advised of Plaintiff's medical condition; Defendant Irene Silva violated the

Eighth Amendment by requesting that Plaintiff be kept in a bunk in front of the cell house doors

and by spraying chemicals in Plaintiff's bunk area and bunk; Defendant (fnu) Arol violated the

Eighth Amendment by refusing to provide Plaintiff with an aid to push his property after being

advised of Plaintiff's medical condition and recent surgery; Defendant Lindsey Wildermuth

violated the Eighth Amendment by violating Plaintiff's medical restrictions.

## II.  Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a

governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a).

The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are

legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that

seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163

(10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III. DISCUSSION

### 1. *Defendant Christopher Hunt*

Plaintiff challenges the disciplinary proceeding over which Defendant Hunt presided. Plaintiff alleges that Defendant Hunt provided Plaintiff with an inadequate hearing record and found him guilty based on insufficient evidence in violation of the Fourteenth Amendment.

"The Fourteenth Amendment prohibits states from depriving citizens of liberty without due process of law." *Wilson v. Jones*, 430 F.3d 1113, 1117 (10th Cir. 2005). This guarantee applies to prison inmates, but "[p]rison disciplinary proceedings are not part of a criminal

prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). The Supreme Court has established that protected liberty interests are at issue in the prison setting only when an inmate is subjected to (1) conditions that "impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or (2) disciplinary actions that "inevitably affect the duration of his sentence." *Harrison v. Morton*, 490 F. App'x. 988, 992 (10th Cir. 2012) (quoting *Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995)).

Plaintiff does not allege the loss of good conduct time. Challenges to prison disciplinary proceedings affecting the duration of a sentence must be raised in a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241. *Abdulhaseeb v. Ward*, 173 F. App'x 658, 659 n.1 (10th Cir. 2006) (citing *McIntosh v. United States Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997) (petitions under § 2241 are used to attack the execution of a sentence, including the deprivation of good-time credits and other prison disciplinary matters); *Brown v. Smith*, 828 F.2d 1493, 1495 (10th Cir. 1987) ("If [the petitioner] can show that his due process rights were violated in the subject disciplinary proceedings, then § 2241 would be the appropriate remedy to use to restore his good time credits.").

Furthermore, § 1983 is not applicable to "challenges to punishments imposed as a result of prison disciplinary infractions," unless the disciplinary conviction has already been invalidated. *Cardoso v. Calbone*, 490 F.3d 1194, 1199 (10th Cir. 2007). The Supreme Court has made clear that "a state prisoner's claim for damages is not cognizable under 42 U.S.C. § 1983 if 'a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence,' unless the prisoner can demonstrate that the conviction or sentence has previously been invalidated." *Edwards v. Balisok*, 520 U.S. 641, 643 (1997) (quoting *Heck v. Humphrey*, 512

U.S. 477, 487 (1994)).   This rule applies not only when the prisoner challenges his conviction but also when he challenges findings of guilt of prison disciplinary infractions.   *Balisok*, 520 U.S. at 648.

Plaintiff has not alleged that his disciplinary conviction affected the duration of his sentence.   Plaintiff has not asserted that he was subjected to conditions that imposed atypical and significant hardship on him in relation to the ordinary incidents of prison life.   Thus, even if his § 1983 claim for damages arising from the denial of due process is not barred by *Heck*, dismissal of it is appropriate for failure to state a claim.

### 2. Defendant CO Obeidat

Plaintiff alleges that Defendant CO Obeidat violated the Eighth Amendment by harassing Plaintiff and interfering with his medical treatment.   Plaintiff does not specify how Defendant Obeidat interfered with his medical treatment.

 "Mere verbal threats or harassment do not rise to the level of a constitutional violation unless they create 'terror of instant and unexpected death.'"   *Alavarez v. Gonzales*, 155 F. App'x 393, 396 (10th Cir. 2005) (citing *Northington v. Jackson*, 973 F.2d 1518, 1524 (10th Cir. 1992)); *see also McBride v. Deer*, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001) ("[A]cts or omissions resulting in an inmate being subjected to nothing more than threats and verbal taunts do not violate the Eighth Amendment."); *Ragland v. Romer*, 73 F.3d 374 (10th Cir.), *cert. denied*, 518 U.S. 1025 (1996) ("Courts have consistently held that acts or omissions resulting in an inmate being subjected to nothing more than threats and verbal taunts do not violate the Eighth Amendment.").

Plaintiff's claim against Defendant Obeidat is subject to dismissal for failure to state a claim.

### 3.   *Defendant Randy (lnu), Aramark Supervisor*

Plaintiff alleges that Defendant Randy (lnu) with Aramark Food Service violated the Eighth Amendment by refusing to provide Plaintiff with a doctor-ordered diet due to his extreme weight loss.   More specifically, Plaintiff alleges that his diet was eventually changed to a high protein diet with no peanut butter, double portions and a snack sack at night.   When Plaintiff was released from the clinic, Aramark Supervisor Randy (lnu) refused to provide the double portion meal diet to Plaintiff, stating that he did not have a record of such a restriction in his "book."

A prison official violates the Eighth Amendment when two requirements are met.   *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).   "First, the deprivation alleged must be, objectively, 'sufficiently serious.'"   *Id.*   To satisfy the objective component, a prisoner must allege facts showing he or she is "incarcerated under conditions posing a substantial risk of serious harm." *Id.*; *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005).   The Eighth Amendment requires prison and jail officials to provide humane conditions of confinement guided by "contemporary standards of decency."   *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).   The Supreme Court has acknowledged that the Constitution "'does not mandate comfortable prisons,' and only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation."   *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (internal citations omitted).   Indeed, prison conditions may be "restrictive and even harsh." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).   "Under the Eighth Amendment, (prison) officials must provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety."   *McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001) (citation omitted).

The second requirement for an Eighth Amendment violation "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" *Farmer*, 511 U.S. at 834. Prison officials must have a "sufficiently culpable state of mind," and in prison-conditions cases that state of mind is "deliberate indifference" to inmate health or safety. *Id*. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. "The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'" *Id*. It is not enough to establish that the official should have known of the risk of harm. *Id*.

Prisons must provide inmates with "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and wellbeing of the inmates who consume it." *Ramos v. Lamm*, 639 F.2d 559, 570–71 (10th Cir. 1980). "A substantial deprivation of food may be sufficiently serious to state a conditions of confinement claim under the Eighth Amendment." *Thompson v. Gibson*, 289 F.3d 1218, 1222 (10th Cir. 2002) (citations omitted). "The [E]ighth [A]mendment assures prisoners a medically and nutritionally sound diet; it does not guarantee a pleasant culinary experience." *Frazier v. Dep't of Corr.*, 1997 WL 603773, at *1 (10th Cir. Oct. 1, 1997) (unpublished) (citation omitted). Plaintiff's allegation that Defendant Randy refused to give him double portions fails to allege a "sufficiently serious" substantial deprivation of food or facts showing he is "incarcerated under conditions posing a substantial risk of serious harm."

Plaintiff does not indicate how many meals failed to contain the double portion, and he does not suggest that the other diet restrictions were not met. Because the sufficiency of a conditions-of-confinement claim depends upon "the particular facts of each situation; the

'circumstances, nature, and duration' of the challenged conditions must be carefully considered." *Despain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (quoting *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000)). "While no single factor controls . . . the length of exposure to the conditions is often of prime importance." *Id*. As the severity of the conditions to which an inmate is exposed increases, the length of exposure required to make out a constitutional violation decreases. Accordingly, "minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while 'substantial deprivations. . .' may meet the standard despite a shorter duration." *Id*. (citations omitted).

Plaintiff has also failed to allege "deliberate indifference" by Defendant Randy. Plaintiff acknowledged that Defendant Randy refused the double portions request because he did not have a record of the order for it. Plaintiff alleges no facts showing that Defendant Randy both knew of and disregarded an excessive risk to his health or safety. Plaintiff's claim against Defendant Randy is subject to dismissal for failure to state a claim of cruel and unusual punishment.

### 4. *Defendant Jane Doe*

Plaintiff alleges that Defendant Nurse Jane Doe violated the Eighth Amendment by having Plaintiff removed from the infirmary for allegedly exercising. Plaintiff has not alleged that Jane Doe was "deliberately indifferent" to his health or safety. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. It is not enough to establish that the official should have known of the risk of harm. *Id*. Plaintiff's claim against Defendant Jane Doe is subject to dismissal for failure to state a claim of cruel and unusual punishment.

### 5. Defendant Dr. Saffo

Plaintiff alleges that because Dr. Saffo was his assigned doctor, he would have been aware of Plaintiff's sick call requests on May 19, 2015, yet he did nothing to schedule an appointment with Plaintiff. Plaintiff acknowledges that when Defendants Gift and Servino were instructed to allow Plaintiff to see Dr. Saffo, Dr. Saffo "immediately admitted Plaintiff to the clinic infirmary." Even if Plaintiff is correct in alleging that Dr. Saffo should have been aware of Plaintiff's sick call requests, there is no allegation that Dr. Saffo was both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and that he also drew the inference. It is not enough to establish that the defendant should have known of the risk of harm. Plaintiff's claim against Dr. Saffo is subject to dismissal for failure to state a claim of cruel and unusual punishment.

### 6. Defendant UTM Wildermuth

Plaintiff claims he was placed in segregation around March 31, 2015, and Defendant Wildermuth placed Plaintiff in a second tier cell, with a burnt and water-soaked mattress and glass on the floor. Plaintiff acknowledges that after he spoke to the Segregation Review Board he was transferred back to the medium facility around the first week in April. Plaintiff has failed to allege "deliberate indifference" by Defendant Wildermuth. Plaintiff alleges no facts showing that Defendant Wildermuth both knew of and disregarded an excessive risk to his health or safety. Plaintiff's claim against Defendant Wildermuth is subject to dismissal for failure to state a claim of cruel and unusual punishment.

### 7. Defendant CO Redieck

Plaintiff claims that Defendant Redieck, along with Defendant Servino, turned Plaintiff away from the clinic and told Plaintiff he needed to submit a sick call because it was not an

emergency. Plaintiff's facts indicate that this happened on May 19, 2015, and that he was seen by Dr. Saffo after complaining to the Captain's Office. Plaintiff has failed to allege "deliberate indifference" by Defendant Redieck. Plaintiff alleges no facts showing that Defendant Redieck both knew of and disregarded an excessive risk to his health or safety. Plaintiff's claim against Defendant Redieck is subject to dismissal for failure to state a claim of cruel and unusual punishment.

## IV. Amended Complaint

Plaintiff is also given the opportunity to file a complete and proper Amended Complaint upon court-approved forms that cures all the deficiencies discussed herein. In order to add claims, significant factual allegations, or change defendants, a plaintiff must submit a complete Amended Complaint. *See* Fed. R. Civ. P. 15. An Amended Complaint is not simply an addendum to the original complaint, and instead completely supersedes it. Therefore, any claims or allegations not included in the Amended Complaint are no longer before the court. It follows that a plaintiff may not simply refer to an earlier pleading, and the Amended Complaint must contain all allegations and claims that a plaintiff intends to pursue in the action, including those to be retained from the original complaint. Plaintiff must write the number of this case (17-3037-SAC-DJW) at the top of the first page of his Amended Complaint and he must name every defendant in the caption of the Amended Complaint. *See* Fed. R. Civ. P. 10(a). Plaintiff should also refer to each defendant again in the body of the complaint, where he must allege facts describing the unconstitutional acts taken by each defendant including dates, locations, and circumstances. Plaintiff must allege sufficient additional facts to show a federal constitutional violation.

Plaintiff must also follow Rules 20 and 18 of the Federal Rules of Civil Procedure when filing an Amended Complaint. FRCP Rule 20 governs permissive joinder of parties and pertinently provides:

> (2) **Defendants**. Persons . . . may be joined in one action as defendants if:
> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2). Rule 18(a) governs joinder of claims and pertinently provides: "A party asserting a claim . . . may join . . . as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a). While joinder is encouraged for purposes of judicial economy, the "Federal Rules do not contemplate joinder of different actions against different parties which present entirely different factual and legal issues." *Zhu v. Countrywide Realty Co., Inc*., 160 F. Supp. 2d 1210, 1225 (D. Kan. 2001) (citation omitted). The Court of Appeals for the Seventh Circuit held in *George v. Smith* that under "the controlling principle" in Rule 18(a), "[u]nrelated claims against different defendants belong in different suits." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (Under Rule 18(a), "multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2.").

Requiring adherence in prisoner suits to the federal rules regarding joinder of parties and claims prevents "the sort of morass [a multiple claim, multiple defendant] suit produce[s]." *Id.* It also prevents prisoners from "dodging" the fee obligations and the three strikes provisions of the Prison Litigation Reform Act. *Id.* (Rule 18(a) ensures "that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees.").

In sum, under Rule 18(a), a plaintiff may bring multiple claims against a single defendant. Under Rule 20(a)(2), he may join in one action any other defendants who were involved in the same transaction or occurrence and as to whom there is a common issue of law or fact. He may not bring multiple claims against multiple defendants unless the prescribed nexus in Rule 20(a)(2) is demonstrated with respect to all defendants named in the action.

The Federal Rules authorize the court, on its own initiative at any stage of the litigation, to drop any party and sever any claim. Fed. R. Civ. P. 21; *Nasious v. City & Cnty. of Denver Sheriff's Dept.*, 415 F. App'x 877, 881 (10th Cir. 2011) (to remedy misjoinder, the court has two options: (1) misjoined parties may be dropped or (2) any claims against misjoined parties may be severed and proceeded with separately). In any Amended Complaint, Plaintiff should set forth the transaction(s) or occurrence(s) which he intends to pursue in accordance with Rules 18 and 20, and limit his facts and allegations to properly-joined defendants and occurrences. Plaintiff must allege facts in his complaint showing that all counts arise out of the same transaction, occurrence, or series of transactions or occurrences; and that a question of law or fact common to all defendants will arise in this action.

Plaintiff is given time to file a complete and proper Amended Complaint in which he (1) shows he has exhausted administrative remedies for all claims alleged; (2) raises only properly joined claims and defendants; (3) alleges sufficient facts to state a claim for a federal constitutional violation and show a cause of action in federal court, and (4) alleges sufficient facts to show personal participation by each named defendant.

## V.  Motion to Appoint Counsel

Plaintiff filed a motion for appointment of counsel (Doc. 2), alleging that he is indigent, the issues involved in this case are complex, he is in segregation with limited access to the law library,

and Plaintiff has limited knowledge of the law.

The Court has considered Plaintiff's motion for appointment of counsel. There is no constitutional right to appointment of counsel in a civil case. *Durre v. Dempsey*, 869 F.2d 543, 547 (10th Cir. 1989); *Carper v. DeLand*, 54 F.3d 613, 616 (10th Cir. 1995). The decision whether to appoint counsel in a civil matter lies in the discretion of the district court. *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991). "The burden is on the applicant to convince the court that there is sufficient merit to his claim to warrant the appointment of counsel." *Steffey v. Orman*, 461 F.3d 1218, 1223 (10th Cir. 2006) (quoting *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004)). It is not enough "that having counsel appointed would have assisted [the prisoner] in presenting his strongest possible case, [as] the same could be said in any case." *Steffey*, 461 F.3d at 1223 (quoting *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995)).

In deciding whether to appoint counsel, courts must evaluate "the merits of a prisoner's claims, the nature and complexity of the factual and legal issues, and the prisoner's ability to investigate the facts and present his claims." *Hill*, 393 F.3d at 1115 (citing *Rucks*, 57 F.3d at 979). The Court concludes in this case that (1) it is not clear at this juncture that Plaintiff has asserted a colorable claim against a named defendant; (2) the issues are not complex; and (3) Plaintiff appears capable of adequately presenting facts and arguments. The Court denies the motion without prejudice to refiling the motion if Plaintiff's Complaint survives screening.

## VI.    Response and/or Amended Complaint Required

For the reasons stated herein, it appears that this action is subject to dismissal as against Defendants Christopher Hunt, CO Obeidat, Randy (lnu), Jane Doe, Dr. Saffo, UTM Wildermuth, and CO Redieck. Plaintiff is therefore required to show good cause why these claims against these Defendants should not be dismissed for the reasons stated herein. The failure to file a

timely, specific response waives de novo review by the District Judge, *see Thomas v. Arn*, 474 U.S. 140, 148–53 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Col. Dept. of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999). Plaintiff is also given the opportunity to file a complete and proper Amended Complaint upon court-approved forms that cures all the deficiencies discussed herein.

**IT IS THEREFORE ORDERED THAT** Plaintiff's motion for appointment of counsel (Doc. 2) is **denied without prejudice.**

**IT IS FURTHER ORDERED** that Plaintiff is granted until **October 20, 2017,** in which to show good cause, in writing, to the Honorable Sam A. Crow, United States District Judge, why Plaintiff's claims against Defendants Christopher Hunt, CO Obeidat, Randy (lnu), Jane Doe, Dr. Saffo, UTM Wildermuth, and CO Redieck should not be dismissed for the reasons stated herein.

**IT IS FURTHER ORDERED** that Plaintiff is also granted until **October 20, 2017**, in which to file a complete and proper Amended Complaint to cure all the deficiencies discussed herein.

The clerk is directed to send § 1983 forms and instructions to plaintiff.

**IT IS SO ORDERED**.

**Dated in Kansas City, Kansas on this 29th day of September, 2017.**


**s/ David J. Waxse**
**David J. Waxse**
**U. S. Magistrate Judge**