# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

SHAWN W. McDIFFETT,

        **Plaintiff,**

        v.                                                  CASE NO. 17-3037-SAC

CHARLES NANCE, et al.,

        **Defendants.**

## MEMORANDUM AND ORDER
## AND ORDER TO SHOW CAUSE

This matter is before the Court on Plaintiff's Response (Doc. 11) to the Court's Notice and Order to Show Cause (Doc. 8) ("NOSC"). The NOSC required Plaintiff to show good cause why his claims against Defendants Christopher Hunt, CO Obeidat, Randy (lnu), Jane Doe, Dr. Saffo, UTM Wildermuth, and CO Redieck should not be dismissed due to the deficiencies in Plaintiff's Complaint that are discussed in the NOSC. The NOSC also granted Plaintiff an opportunity to file a complete and proper Amended Complaint to cure all the deficiencies discussed in the NOSC. Plaintiff filed his Response, as well as an Amended Complaint (Doc. 12). The Court has screened Plaintiff's Amended Complaint and considered Plaintiff's Response,[1] and finds that Plaintiff has failed to show good cause why Defendants Christopher Hunt, CO Obeidat, Randy (lnu), John/Jane Doe, Dr. Saffo, and CO Redieck should not be dismissed. The Court dismisses these Defendants for the reasons set forth in the NOSC. *See* Doc. 8, at 10–17. The Court also orders Plaintiff to

---

[1] Plaintiff's Response does not address any of the deficiencies in the NOSC. Rather, Plaintiff informs the Court that he is experiencing difficulty obtaining paper and writing supplies from staff at Hutchinson Correctional Facility. Plaintiff also informs the Court that he is experiencing trouble receiving grievance responses and research materials, as well as a delay in receiving legal mail. The Court previously granted Plaintiff's request for an extension of time to respond to the NOSC, based on his argument that he had pending grievances regarding his access to paper and writing materials. Plaintiff filed his Response and Amended Complaint, consisting of 48 handwritten pages, prior to the extended deadline. Plaintiff's Amended Complaint does not name HCF staff as defendants and does not include the claims mentioned in his Response. To the extent Plaintiff suggests that these claims justify the appointment of counsel, such a request is denied for the reasons set forth in the NOSC denying Plaintiff's previous motion for appointment of counsel.

show good cause, in writing, to the Honorable Sam A. Crow, United States District Judge, why his claims against Defendants Jennifer Kieltyka, Lauren Gift, Beverly Jackson, Gaye Servino, Eilene (lnu), (fnu) Arol, Cris Ross and Douglas Burris, should not be dismissed for the reasons set forth in this Memorandum and Order and Order to Show Cause.

## I. Nature of the Matter before the Court

Plaintiff brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Although Plaintiff is currently incarcerated at the Hutchinson Correctional Facility in Hutchinson, Kansas ("HCF"), the events giving rise to his Amended Complaint took place during his incarceration at the Lansing Correctional Facility in Lansing, Kansas ("LCF"). Plaintiff names as defendants: Charles Nance, Unit Team Manager ("UTM") at LCF; Karl[2] Saffo, M.D. employed by Corizon; Jennifer Kieltyka, ARNP/PA employed by Corizon; Lauren Gift, Corizon Clinic Administrator; Beverly Jackson, Corizon Nurse; John/Jane Doe, Corizon Nurse; Gaye Servino, Corizon Nurse; Barbara Redieck, Correctional Officer ("CO") at LCF; Randy (lnu), Aramark Food Service Supervisor; (fnu) Obeidat, CO at LCF; Irene Silva, CO at LCF; (fnu) Arol, CO at LCF; Christopher Hunt, Disciplinary Hearing Officer ("DHO") at LCF; Eilene (lnu), Corizon Infirmary Nurse; Lindsay Wildermuth, UTM at LCF Segregation and/or Restrictive Housing Unit; Nicolaus Ball, UTM at LCF Segregation and/or Restrictive Housing Unit; Cris Ross, Grievance Officer at LCF; and Douglas Burris, KDOC Corrections Manager/Facility Management. All Defendants are sued in their individual capacities. Plaintiff seeks a declaratory judgment, compensatory damages, nominal damages and punitive damages.

The Court's NOSC set forth in detail the facts alleged in the original Complaint, which cover the time period through Plaintiff's second hernia surgery in July 2015. (Doc. 8, at 1–8.) The Amended Complaint provides the following additional allegations for the time period

---

[2] Plaintiff's original Complaint referred to Defendant Saffo as "Kent" Saffo.

following his second surgery.

Plaintiff had a follow up with the surgeon two weeks after his second surgery. The surgeon requested another follow up in two weeks, but Defendant Nurse Jackson told Plaintiff he did not need to go back for any additional follow ups.

Plaintiff insisted on longer recovery time—three weeks in the infirmary—after his second surgery, and did not experience problems as he had with his first surgery. However, CO Obeidat interfered with doctor's orders by failing to allow Plaintiff proper out-of-cell time in which to rehabilitate and ambulate properly. The nursing staff contacted the individual overseeing the infirmary to direct CO Obeidat to let Plaintiff out of his cell morning, noon and evening. Plaintiff received a modified diet, was allowed to care for his incision site, and was placed back in general population in A-1 Cellhouse to further recover.

Following Plaintiff's second surgery, he had numerous problems with UTM Parks and UTM Nance, and was placed in administrative segregation several times. Plaintiff alleges that his housing assignments continued to violate his medical restrictions. After a transfer to another cell, Plaintiff's personal fans were missing. He requested a "state indigent fan" on Saturday and was told he would have to get one from the UTM on Monday. The temperature had been in excess of 100 degrees and was expected to continue all weekend. Plaintiff was informed on Monday that there were no indigent fans available, and that staff would go to the property room later in the week to bring Plaintiff the rest of his property, including his fan.

Plaintiff claims that the following allegations are the result of Plaintiff's "attempts to avoid a hostile and threatening environment with UTM-Parks" which would be present in D-Cellhouse—a maximum security cellhouse. Plaintiff claims that his refusal to be housed in D-Cellhouse caused him to be subjected to discipline. (Doc. 12, at 32.) Plaintiff claims that the

door-locking mechanisms in D-Cellhouse are faulty, allowing them to be opened from the inside or outside with as little as a pencil, a toothbrush, a nail or a piece of wire. Plaintiff acknowledges that the necessary steps to correct the door locking mechanisms "were rumored to start as early as October 2016."

On July 25, 2016, Plaintiff was informed that he was being released from segregation and would be returning to D-Cellhouse. Plaintiff informed staff that he would go as long as he was not harassed by UTM Parks or placed into a cell right up front by the office. When Plaintiff arrived at D-Cellhouse and realized they were in fact going to place him up front by the office, Plaintiff turned his cart around and returned to segregation. Plaintiff informed staff that if they attempted to return him to D-Cellhouse he would "refuse to lock down." Defendant Wildermuth gave Plaintiff a DR for disobeying orders by refusing to go to D-102. Plaintiff alleges that Wildermuth asked Plaintiff is he was ready to go to D-102 and he replied "no," but no "direct order" was given.

Plaintiff alleges the UTM Wildermuth placed him on a "kick-out" list "knowing [he] had already refused and would continue to refuse to move to D-Cellhouse." (Doc. 32, at 33.) Plaintiff received a second DR, before he had a hearing on his first DR. When Mr. Hunt came to Plaintiff's cell to ask how he wanted to plead to the second DR, Plaintiff inquired about the hearing for the first DR and stated that it should be dismissed. Plaintiff alleges that the hearing was held on the second DR prior to the first, because the second report was a more "sound report." (Doc. 12, at 33.) Plaintiff alleges that Defendants Wildermuth and Ball continued to refuse to move Plaintiff to a different cell in retaliation and to "satisfy their own sadistic desires for [Plaintiff's] refusal to adhere to their order to move [him] to a hostile, unsafe and unsecure environment." (Doc. 12, at 34.)

4

Plaintiff alleges that there were other inmates in A-1 Segregation ("Seg") and C-1 Seg who refused to move back to a general population cell, for whatever reason, and they were not held in an MRA cell or continuously written disciplinary reports or denied property, adequate food, lighting, clothing, medical or other liberties and/or privileges. Plaintiff also alleges that Defendants Ball and Wildermuth denied him access to the courts, outside cellhouse departments such as the records department, library, EAI department, legal services, mental health, etc., by failing to forward his request forms.

Plaintiff acknowledges that he "returned himself" to C-1 Seg on July 25, 2016. (Doc. 12, at 33.) Plaintiff was in C-1 Seg for a couple of hours and then placed in MRA Cell 108, where he remained for the next seventeen days. Plaintiff alleges that he did not have any of his personal property and he was placed in an MRA cell "without ever committing an MRA offense." (Doc. 12, at 31.) Plaintiff alleges that while in Cell 108: he did not have his property, lights, electricity, proper running hot or cold water suitable for drinking; there was no exhaust to bring fresh air into the cell; air flow was restricted due to mesh wire screens and plexiglass covering the entire front of the cell "clogged and soiled with human feces, blood, food, bugs, and who knows what else"; he was made to wait over ten days for a shower, with showers only on Monday, Wednesday and Saturday—all while the heat temperatures were at least 95 degrees and most days above 100 degrees.

Plaintiff filed grievances due to his continued placement in the MRA cell by UTM Wildermuth. The warden's response was signed by Cris Ross, the warden's designee, and included an incorrect date. The response stated that "no action can be taken through the grievance procedure; stating that K.A.R. 44-15-101a(d)(1) prohibits use of the grievance procedure in any way as a substitute for, or as a part of, the inmate disciplinary claims procedure, or the procedure

5

for censorship of publications specified in the Secretary's Internal Management Policy and Procedure." (Doc. 12, at 39.)  Plaintiff appealed to the Secretary of Corrections, and the secretary's designee, Douglas Burris, responded that Plaintiff's complaint was clearly about the classification decision-making process and the inmate disciplinary procedure and K.A.R. 44-15-101 prohibited the use of the grievance procedure to address this concern. (Doc. 12, at 40.)  Plaintiff alleges that he was complaining about his conditions of confinement, which is clearly grievable.

## II.   Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992).  A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  In addition, the court accepts all well-pleaded allegations in the complaint as true.  *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006).   On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate.  *Bell Atlantic Corp. v. Twombly*, 550

U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a

complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III. DISCUSSION

Plaintiff's 47-page Amended Complaint violates Rule 8 of the Federal Rules of Civil Procedure because it is not a short and plain statement of Plaintiff's claim. His Amended Complaint also violates D. Kan. Rule 9.1(a) because Plaintiff has not actually submitted his claims and supporting facts upon the court-approved forms. Instead, he references paragraphs from his attached, handwritten pages. He then attaches numerous pages of handwritten, prolix statements. Many of Plaintiff's statements of fact recite Plaintiff's interpretation of the applicable law. *See* Doc. 12, at ¶¶ 196–197, 199, 201–203, 207, 210, 213–214, 218, 221–222.

In addition, many of Plaintiff's allegations relate to individuals who are not named as a defendant. For example: Plaintiff's paragraphs alleging he was denied his personal fan or a "state indigent fan" refer to UTS Elliot and UTM Thompson—neither of whom are named as defendants (Doc. 12, at 28); Plaintiff's allegations regarding attempts to move him to another cell refer to CO Kirch, SORT Team Member Kipper, and UTM Thompson—none of whom are named as defendants (Doc. 12, at 29); Plaintiff's allegations that Sgt. Miller—who is not a named defendant—allowed other inmates to enter his cell and take his property (Doc. 12, at 30); Plaintiff's allegations that Mr. Hart—not a named defendant—volunteered when Plaintiff, desiring to return to his segregation cell, asked if he needed to assault someone to get back in segregation (Doc. 12, at 31). In addition, many of Plaintiff's allegations deal with staff antagonizing him, "ribbing" him, or acting "unprofessional"—none of which rise to the level of a

constitutional violation. For example, Plaintiff claims that Defendant Ball said Plaintiff was a "dope slinger" which Plaintiff claims was untrue and a "willful slander" with malicious intent. (Doc. 12, at 31.)

### *1. Medical Claims*

Plaintiff's medical claims against Defendants Jennifer Kieltyka, Lauren Gift, Beverly Jackson, Gaye Servino, and Eilene (lnu), as set forth in detail in the NOSC, are subject to dismissal for failure to state a claim. The Eighth Amendment guarantees a prisoner the right to be free from cruel and unusual punishment. "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted).

The "deliberate indifference" standard includes both an objective and a subjective component. *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005) (citation omitted). In the objective analysis, the deprivation must be "sufficiently serious," and the inmate must show the presence of a "serious medical need," that is "a serious illness or injury." *Estelle*, 429 U.S. at 104, 105; *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), *Martinez*, 430 F.3d at 1304 (citation omitted). A serious medical need includes "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Martinez*, 430 F.3d at 1304 (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)).

"The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety." *Id*. (quoting *Sealock*, 218 F.3d at 1209). In measuring a prison official's state of mind, "the official must both be aware of facts from which the inference

could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 1305 (quoting *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996)).

A mere difference of opinion between the inmate and prison medical personnel regarding diagnosis or reasonable treatment does not constitute cruel and unusual punishment. *See Estelle*, 429 U.S. at 106–07; *see also Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968) (prisoner's right is to medical care—not to type or scope of medical care he desires and difference of opinion between a physician and a patient does not give rise to a constitutional right or sustain a claim under § 1983). Plaintiff's allegations do not show a complete lack of medical care, but rather show Plaintiff's disagreement regarding the proper course of treatment. *See Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010) (noting that plaintiff's allegations indicate not a lack of medical treatment, but a disagreement with the doctor's medical judgment in treating a condition with a certain medication rather than others).

Plaintiff complains about the delay in follow-up with his surgeon, delay in seeing the doctor, delay in receiving his medication, and delay in receiving a hernia belt. Delay in providing medical care does not violate the Eighth Amendment, unless there has been deliberate indifference resulting in substantial harm. *Olson v. Stotts*, 9 F.3d 1475 (10th Cir. 1993). In situations where treatment was delayed rather than denied altogether, the Tenth Circuit requires a showing that the inmate suffered "substantial harm" as a result of the delay. *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000) (citation omitted). "The substantial harm requirement 'may be satisfied by lifelong handicap, permanent loss, or considerable pain.'" *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)). Plaintiff has failed to make such a showing.

Plaintiff also disagrees with certain medications provided. A complaint alleging that

plaintiff was not given plaintiff's desired medication, but was instead given other medications, "amounts to merely a disagreement with [the doctor's] medical judgment concerning the most appropriate treatment." *Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010) (noting that plaintiff's allegations indicate not a lack of medical treatment, but a disagreement with the doctor's medical judgment in treating a condition with a certain medication rather than others); *Hood v. Prisoner Health Servs., Inc.*, 180 F. App'x 21, 25 (10th Cir. 2006) (unpublished) (where appropriate non-narcotic medication was offered as an alternative to the narcotic medication prescribed prior to plaintiff's incarceration, a constitutional violation was not established even though plaintiff disagreed with the treatment decisions made by prison staff); *Carter v. Troutt*, 175 F. App'x 950 (10th Cir. 2006) (unpublished) (finding no Eighth Amendment violation by prison doctor who refused to prescribe a certain pain medication where he prescribed other medications for the inmate who missed follow-up appointment for treatment and refused to be examined unless he was prescribed the pain medication he wanted); *Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992) ("Plaintiff's belief that he needed additional medication, other than that prescribed by the treating physician, as well as his contention that he was denied treatment by a specialist is . . . insufficient to establish a constitutional violation.").

Plaintiff's allegations of denial of medical care are subject to dismissal for failure to state a claim. Plaintiff's allegations indicate that he has been furnished medical care during the relevant time frame, including two surgeries, doctor and nurse visits, and various medications. They also indicate that his claims amount to a difference of opinion with the treatments he has been provided by medical staff. Plaintiff's allegations are nothing more than a lay person's disagreement with the medical treatment of his symptoms by medical professionals. Such allegations do not rise to

the level of a claim of cruel and unusual punishment under the Eighth Amendment; and are, at most, grounds for a negligence or malpractice claim in state court.

Plaintiff only alleges a negligence claim against Defendants Jennifer Kieltyka and Eilene (lnu). Because Plaintiff has not alleged a federal claim against these Defendants, and Plaintiff's other medical claims are subject to dismissal, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. *See Beauclair v. Roberts*, No. 14-3022-SAC, 2015 WL 197332, at *4 (D. Kan. Jan. 14, 2015) (finding that unless the complaint evinces a federal constitutional violation, this court does not have supplemental jurisdiction over state law claims, and state law violations generally fail to present a claim under § 1983). The Court offers no opinion on the merits of any claim Plaintiff may present in state court on a theory of negligence or medical malpractice.

Even if Plaintiff can show good cause why his medical claims should survive screening, he must also show good cause why these claims are properly joined with his remaining claims against Defendants Nance, Silva, Wildermuth and Ball. Those claims are based on retaliation, the denial of equal protection, the alleged violation of his "no-stairs" medical restriction, and his placement in a cell where he was subjected to chemical sprays, outside air and remodeling dust and debris. Plaintiff does not allege that medical staff failed to document his medical restrictions. In fact, he claims that prison staff were well aware of his medical restrictions which are "all documented within their computer system . . . and PULHEX, which deals with [his] medical classifications and restrictions." (Doc. 12, at 32.) Plaintiff asserts that he has also put prison staff on notice of his medical restrictions.

The Court's NOSC warned Plaintiff that he must follow Rules 20 and 18 of the Federal Rules of Civil Procedure when filing his Amended Complaint, and that he should set forth the

transaction(s) or occurrence(s) which he intends to pursue in accordance with Rules 18 and 20, and limit his facts and allegations to properly-joined defendants and occurrences. Despite this warning, Plaintiff has retained all of the claims and Defendants from his original complaint, as well as added additional claims and Defendants in his Amended Complaint.

Rule 20 governs permissive joinder of parties and pertinently provides:

> (2) **Defendants**. Persons . . . may be joined in one action as defendants if:
> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2). Rule 18(a) governs joinder of claims and pertinently provides: "A party asserting a claim . . . may join . . . as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a). While joinder is encouraged for purposes of judicial economy, the "Federal Rules do not contemplate joinder of different actions against different parties which present entirely different factual and legal issues." *Zhu v. Countrywide Realty Co., Inc.*, 160 F. Supp. 2d 1210, 1225 (D. Kan. 2001) (citation omitted). The Court of Appeals for the Seventh Circuit held in *George v. Smith* that under "the controlling principle" in Rule 18(a), "[u]nrelated claims against different defendants belong in different suits." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (Under Rule 18(a), "multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2.").

Requiring adherence in prisoner suits to the federal rules regarding joinder of parties and claims prevents "the sort of morass [a multiple claim, multiple defendant] suit produce[s]." *Id.* It also prevents prisoners from "dodging" the fee obligations and the three strikes provisions of the Prison Litigation Reform Act. *Id.* (Rule 18(a) ensures "that prisoners pay the required filing

fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees.").

In sum, under Rule 18(a), a plaintiff may bring multiple claims against a single defendant. Under Rule 20(a)(2), he may join in one action any other defendants who were involved in the same transaction or occurrence and as to whom there is a common issue of law or fact. He may not bring multiple claims against multiple defendants unless the prescribed nexus in Rule 20(a)(2) is demonstrated with respect to all defendants named in the action.

The Federal Rules authorize the court, on its own initiative at any stage of the litigation, to drop any party and sever any claim. Fed. R. Civ. P. 21; *Nasious v. City & Cnty. of Denver Sheriff's Dept.*, 415 F. App'x 877, 881 (10th Cir. 2011) (to remedy misjoinder, the court has two options: (1) misjoined parties may be dropped or (2) any claims against misjoined parties may be severed and proceeded with separately). Plaintiff must show cause why inclusion of his medical claims complies with Rules 18 and 20.

### 2. *Claims Regarding Grievance Responses*

Plaintiff's claims against Defendants Ross and Burris relate to his dissatisfaction with their responses to his grievances. The Tenth Circuit has held several times that there is no constitutional right to an administrative grievance system. *Gray v. GEO Group, Inc.*, No. 17–6135, 2018 WL 1181098, at \*6 (10th Cir. March 6, 2018) (citations omitted); *Von Hallcy v. Clements*, 519 F. App'x 521, 523–24 (10th Cir. 2013); *Boyd v. Werholtz*, 443 F. App'x 331, 332 (10th Cir. 2011); *see also Watson v. Evans*, Case No. 13–cv–3035–EFM, 2014 WL 7246800, at \*7 (D. Kan. Dec. 17, 2014) (failure to answer grievances does not violate constitutional rights or prove injury necessary to claim denial of access to courts); *Strope v. Pettis*, No. 03–3383–JAR, 2004 WL 2713084, at \*7 (D. Kan. Nov. 23, 2004) (alleged failure to investigate grievances does

not amount to a constitutional violation); *Baltoski v. Pretorius*, 291 F. Supp. 2d 807, 811 (N.D. Ind. 2003) (finding that "[t]he right to petition the government for redress of grievances . . . does not guarantee a favorable response, or indeed any response, from state officials"). Plaintiff's claims against Defendants Ross and Burris are subject to dismissal for failure to state a claim.

### 3. *Claim Against Defendant Arol*

Plaintiff alleges that following his first hernia surgery he was taken to the LCF maximum facility infirmary and was released the next morning—less than 24 hours after surgery—to return to the LCF medium facility. Plaintiff claims that when he asked for help returning to his cell at the LCF medium facility, Defendant Arol told Plaintiff to put his boxes of property on his wheelchair and push it so he would not have to carry it.

Plaintiff has failed to allege that Defendant Arol was deliberately indifferent to his serious medical needs. The "deliberate indifference" standard includes both an objective and a subjective component. *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005) (citation omitted). "The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety." *Id.* (quoting *Sealock*, 218 F.3d at 1209). In measuring a prison official's state of mind, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 1305 (quoting *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996)). Plaintiff's claims against Defendant Arol are subject to dismissal for failure to state a claim of deliberate indifference.

### 4. *Claims Against Defendants Nance, Silva, Wildermuth and Ball*

Plaintiff alleges that these Defendants placed him in cells that were noncompliant with his medical restrictions and in violation of his Eighth Amendment right to be free from cruel and

15

unusual punishment. Plaintiff alleges that his "no-stairs" medical restriction was violated and he was placed in a cell where he was subjected to chemical sprays, outside air and remodeling dust and debris. Plaintiff also claims that Defendants Wildermuth and Ball retaliated against him by placing him in an MRA cell and failing to forward his request forms. Plaintiff claims that he was denied equal protection because similarly situated inmates were housed in compliance with their medical restrictions and similarly situated inmates refusing to return to general population were not placed in an MRA cell.

Prisoners have no constitutional right to choose their housing assignment. *See Graham v. Stotts*, No. 91–3296– DES, 1993 WL 502422, at *3 (D. Kan. Nov. 30, 1993) (citing *Meachum v. Fano*, 427 U.S. 215 (1976)). However, housing assignments that are inconsistent with or aggravate a prisoner's medical condition may constitute deliberate indifference. *See Helling v. McKinney*, 509 U.S. 25, 33–35 (1993) (holding that exposure to environmental tobacco smoke may violate the Eighth Amendment if it is done with deliberate indifference, if it poses an "unreasonable risk of serious damage to [prisoners'] health" (including harm that may occur in the future) and if the risk is sufficient to violate contemporary standards of decency); *Smith v. United States*, 561 F.3d 1090, 1094, 1105 (10th Cir. 2009) (allegation of knowing exposure to asbestos dust stated an Eighth Amendment claim); *Ramos v. Lamm*, 639 F.2d 559, 568 (10th Cir. 1980) (prisoners are entitled to "shelter which does not cause [their] degeneration or threaten [their] mental and physical well being"); *Payne v. Lynaugh*, 843 F.2d 177, 178–79 (5th Cir. 1988) (failure to transfer prisoner to facility with oxygen equipment required for his emphysema stated a deliberate indifference claim); *Johnson v. Pearson*, 316 F. Supp. 2d 307, 316–19 (E.D. Va. 2004) (persistently double-celling prisoner with respiratory problems with smokers could constitute deliberate indifference); *Lavender v. Lampert*, 242 F. Supp. 2d 821, 849 (D. Ore. 2002) (allegation

that prisoner with severe orthopedic problems was housed in hilly terrain that exacerbated them raised a factual issue of deliberate indifference); *Board v. Farnham*, 394 F.3d 469, 485–87 (7th Cir. 2005) (allegations that ventilation system was contaminated with black mold and fiberglass liner, which were hazardous to health and aggravated prisoners' asthma, and defendants did nothing when notified but vacuum the grates, supported a deliberate indifference claim:; *Kelly v. Borg*, 60 F.3d 664, 667 (9th Cir. 1995) (refusing to let prisoner out of cell who was overcome by fumes from nearby construction could constitute deliberate indifference); *Johnson-El v. Schoemehl*, 878 F.2d 1043, 1054–55 (8th Cir. 1989) (an allegation that pesticides were sprayed in housing units so that inmates had to breathe the fumes stated a claim under the deliberate indifference standard); *cf. Lewis v. Lynn*, 236 F.3d 766, 767–68 (5th Cir. 2001) (rejecting claim that prisoner with asthma was inappropriately assigned to hoeing, digging, and spreading dirt, where officials first consulted with medical personnel); *Givens v. Jones*, 900 F.2d 1229, 1234 (8th Cir. 1990) (finding that subjection for three weeks to noise and fumes from housing unit renovations did not violate Eighth Amendment even if they gave plaintiff migraine headaches, and stating that "[r]emodeling and upkeep of institutions and buildings, in and out of prison, is a fact of life that must be faced by most individuals").

The court finds the proper processing of Plaintiff's claims against Defendants Nance, Silva, Wildermuth and Ball, cannot be achieved without additional information from appropriate officials of the Lansing Correctional Facility. *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978). *See also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991).

## IV.  Response Required

For the reasons stated herein, it appears that this action is subject to dismissal as against Defendants Jennifer Kieltyka, Lauren Gift, Beverly Jackson, Gaye Servino, Eilene (lnu), (fnu)

Arol, Cris Ross and Douglas Burris. Plaintiff is therefore required to show good cause why these claims against these Defendants should not be dismissed for the reasons stated herein.

**IT IS THEREFORE ORDERED BY THE COURT THAT**

(1) The clerk of court shall serve Defendants Nance, Silva, Wildermuth and Ball, under the e-service pilot program in effect with the Kansas Department of Corrections. The report required herein shall be filed within sixty (60) days from the filing of the waiver form, and the answer shall be filed within sixty (60) days following the receipt of that report by counsel for Defendants or the date set forth in the waiver of summons, whichever is later.

(2) Officials responsible for the operation of the Lansing Correctional Facility are directed to undertake a review of the subject matter of Plaintiff's claims against Defendants Nance, Silva, Wildermuth and Ball, as set forth in Plaintiff's Amended Complaint:

>  (a) to ascertain the facts and circumstances;
>
>  (b) to consider whether any action can and should be taken by the institution to resolve the subject matter of the Amended Complaint;
>
>  (c) to determine whether other like complaints, whether pending in this Court or elsewhere, are related to the Amended Complaint and should be considered together.

(3) Upon completion of the review, a written report shall be compiled which shall be filed with the Court. Statements of all witnesses shall be in affidavit form. Copies of pertinent rules, regulations, official documents and, wherever appropriate, the reports of medical or psychiatric examinations shall be included in the written report. Any tapes of the incident underlying Plaintiff's claims shall also be included.

(4) Authorization is granted to the appropriate KDOC officials to interview all witnesses having knowledge of the facts including Plaintiff.

(5) No answer or motion addressed to the Amended Complaint shall be filed until the *Martinez* Report requested herein has been prepared and filed.

(6) Discovery by Plaintiff shall not commence until Plaintiff has received and reviewed Defendants' answer or response to the Amended Complaint and the report required herein. This action is exempted from the requirements imposed under Fed. R. Civ. P. 26(a) and 26(f).

**IT IS FURTHER ORDERED that** the clerk of court shall enter the Kansas Department of Corrections as an interested party on the docket for the limited purpose of preparing the *Martinez* Report ordered herein. Upon the filing of that report, KDOC may move for termination from this action.

**IT IS FURTHER ORDERED that** Plaintiff is granted until **April 9, 2018,** in which to show good cause, in writing, to the Honorable Sam A. Crow, United States District Judge, why Plaintiff's claims against Defendants Jennifer Kieltyka, Lauren Gift, Beverly Jackson, Gaye Servino, Eilene (lnu), (fnu) Arol, Cris Ross and Douglas Burris should not be dismissed for the reasons stated herein.

**IT IS FURTHER ORDERED that** Defendants Christopher Hunt, CO Obeidat, Randy (lnu), John/Jane Doe, Dr. Saffo, and CO Redieck are **dismissed.**

Copies of this Order shall be transmitted to Plaintiff, to Defendants, to the Warden of LCF, and to the Attorney General for the State of Kansas.

**IT IS SO ORDERED**.

**Dated in Topeka, Kansas, on this 16th day of March, 2018.**

> **s/ Sam A. Crow**
> **SAM A. CROW**
> **U. S. Senior District Judge**