# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

SHAWN W. MCDIFFETT,

    **Plaintiff,**

    v.

CHARLES NANCE, et al.,

    **Defendants.**

Case No. 17-3037-JAR-JPO

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants'[1] Motion to Dismiss, or in the Alternative, for Summary Judgment (Doc. 58) (Defendants' "Motion") seeking dismissal or, alternatively, summary judgment on grounds of nonexhaustion of administrative remedies, qualified immunity, and failure to state a claim. Defendants Nance, Ball, Savino, Silva, and Wildermuth filed this Motion on February 27, 2019. On that same day, these Defendants sent Plaintiff a "Notice to Pro Se Litigant Who Opposes a Motion for Summary Judgment", explaining Plaintiff's burden under Federal Rule of Civil Procedure 56 and Local Rule 56.1.[2] Despite receiving this Notice, Plaintiff has filed no response to Defendants' Motion.

Having received no response from Plaintiff, the Court ordered him to "show good cause, in writing, on or before August 9, 2019, why Defendants' motion should not be granted as unopposed."[3] Plaintiff was further ordered to "file any response to Defendants' motion by

---

[1] Although there are six defendants remaining in this lawsuit, the Motion was only filed as to five. The sixth defendant, Beverly Jackson, has not joined in the Motion. As such, this Memorandum and Order does not dispose of any claims against Defendant Jackson.

[2] Doc. 61.

[3] Doc. 67 at 2.

August 9, 2019."[4]  Plaintiff moved for additional time to respond to the Motion.[5]  The Court granted this request in part, giving Plaintiff until September 23, 2019 to file his response.[6]  To date, Plaintiff still has not filed any response and the time for doing so has expired.  Accordingly, the Court deems admitted the facts presented by Defendants in support of their Motion—to the extent such facts are supported by the record—and finds that summary judgment must be granted in favor of Defendants, as detailed below.

**I.     Nature of the Matter before the Court**

Plaintiff brings this pro se civil rights action pursuant to 42 U.S.C. § 1983.  The events giving rise to Plaintiff's Amended complaint took place while he was incarcerated at the Lansing Correctional Facility in Lansing, Kansas ("LCF").  Plaintiff filed this lawsuit on March 07, 2017.  The Court issued a "Notice and Order to Show Cause," ordering Plaintiff to show cause as to why certain defendants should not be dismissed and granting him additional time to file a complete and proper amended complaint to cure deficiencies.[7]  Plaintiff complied, filing an Amended Complaint that listed multiple defendants sued in their individual capacities.[8]  The Court then issued a second "Notice and Order to Show Cause," again requesting Plaintiff to show cause as to why certain defendants should not be dismissed.[9]  After conducting a preliminary review of Plaintiff's Amended Complaint, the Court determined that a responsive pleading was necessary, and entered a service order.[10]  Following the Court's third "Notice and

---

[4] *Id.*

[5] Doc. 77.  The Court notes that, in this motion, Plaintiff also requested other relief which was denied.

[6] Doc. 79.

[7] Doc. 8.

[8] *See* Doc. 12; *see also* Doc. 13 at 2.

[9] Doc. 13.

[10] Doc. 14.

2

Order to Show Cause," six defendants remain in this lawsuit: Charles Nance, Unit Team Manager ("UTM") at LCF; Lindsay Wildermuth, UTM at LCF; Nicolaus Ball, UTM at LCF; Irene Silva, Correctional Officer ("CO") at LCF; Gay Savino, employee of the Kansas Department of Corrections ("KDOC"); and Beverly Jackson, nurse, employed by Corizon Health, Inc. Defendants Nance, Wildermuth, Ball, Silva, and Savino are all represented by the Office of the Attorney General of Kansas. Defendant Beverly Jackson is represented by Richard Acosta and Roger Slead of Horn, Aylward & Bandy LLC.[11]

As discussed more fully in prior orders of the Court,[12] many of Plaintiff's allegations in his Amended Complaint relate to individuals other than Defendants. For clarity, the Court will set out Plaintiff's remaining claims against Defendants Nance, Wildermuth, Ball, Silva, and Savino before addressing their Motion. The Court will also summarize the factual basis provided for Plaintiff's allegations.[13]

A. *Medical Claims*

Plaintiff's claims regarding his medical care relate to Defendant Savino, and the care Plaintiff received at LCF before and after hernia surgery.[14] Plaintiff alleges that Defendant

---

[11] Docs. 34, 35.

[12] Doc. 13.

[13] The facts recited in this section are taken from Plaintiff's Amended Complaint (Doc. 12) and the "Report in 'Martinez v. Aaron' Investigation Civil Rights Complaint" (the "*Martinez* Report") (Doc. 41), filed by interested party KDOC.

A *Martinez* report is a vehicle, developed through Tenth Circuit case law, for ensuring a factually sufficient record in cases involving pro se prisoner plaintiffs. *See Martinez v. Aaron*, 570 F.2d 317, 319 (10th Cir. 1978). A *Martinez* report "is not only proper, but may be necessary to develop a record sufficient to ascertain whether there are any factual or legal bases for the prisoner's claims." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991).

Generally, when a court considers materials outside the pleadings when deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the motion is treated as one for summary judgment and the plaintiff must be given notice and an opportunity to respond pursuant to Fed. R. Civ. P. 12(d) and Fed. R. Civ. P. 56. In this case, Plaintiff has had ample opportunity to file such objections, and has not done so.

[14] The Court has already dismissed many of Plaintiff's claims related to medical care. *See* Doc. 30 (summarizing the Court's reasons for dismissal).

Savino ordered his wheelchair to be taken away from him following hernia surgery and refused to provide Plaintiff with an aide. Plaintiff also alleges that Defendant Savino did not properly relay his medical restrictions to Defendant Nance. Plaintiff alleges that Defendant Savino did not allow Plaintiff to see a doctor in response to a medical emergency, instead instructing him to submit a sick call request. Plaintiff alleges that other employees of KDOC then called Defendant Savino and instructed her to allow Plaintiff to see a doctor immediately. Defendant Savino complied with their instruction.

### B. *Claims Against Defendants Nance, Silva, Wildermuth, and Ball*

Plaintiff alleges that Defendants Nance, Silva, Wildermuth, and Ball placed him in cells that did not comply with his medical restrictions. In particular, Plaintiff claims: (1) he was placed in cells that required the use of stairs notwithstanding his "no stairs" medical restriction, and (2) he was placed in cells where he was subjected to chemical sprays, outside air, remodeling dust, and debris. Plaintiff also alleges that Defendants Wildermuth and Ball placed him in a "more restricted area" cell ("MRA cell") and did not forward request forms he gave to them. He speculates that this was retaliation because he had filed administrative grievances. Plaintiff also claims he was denied equal protection by these four defendants because similarly-situated inmates were housed in compliance with their medical restrictions, and similarly-situated inmates that refused to return to general population were not kept in MRA cells.

## II. Legal Standard

Defendants have raised the affirmative defense of nonexhaustion[15] and refer to materials outside of the pleadings in support thereof. Because the Court has considered materials outside

---

[15] *See Jones v. Bock*, 549 U.S. 199, 216 (2007) (holding that "[f]ailure to exhaust is an affirmative defense" under the Prison Litigation Reform Act, "and that inmates are not required to specially plead or demonstrate exhaustion in their complaints").

4

the pleadings—namely, the *Martinez* Report—the Defendants' Motion is evaluated using the standards for summary judgment. Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.[16] In applying this standard, a court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[17] "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the nonmoving party, is such that a reasonable jury could return a verdict for the nonmoving party."[18] A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[19] An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."[20]

The moving party initially must show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[21] In attempting to meet this standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.[22] When, as here, an affirmative defense is raised at the summary judgment stage, the defendant must demonstrate that "no disputed material fact exists

---

[16] FED. R. CIV. P. 56(a); *see also Grynberg v. Total*, 538 F.3d 1336, 1346 (10th Cir. 2008).

[17] *City of Harriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

[18]*Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[19]*Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 670 (10th Cir. 1998)).

[20]*Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (quoting *Anderson*, 477 U.S. at 248).

[21]*Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[22]*Adams v. Am. Guar. & Liab. Ins. Co.,* 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler*, 144 F.3d at 671); *see also Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010).

regarding the affirmative defense asserted."[23] Once the defendant has met this initial burden, the plaintiff must "demonstrate with specificity the existence of a disputed material fact."[24] The defendant is entitled to summary judgment as a matter of law if the plaintiff fails to make such a showing.[25]

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[26] The nonmoving party may not simply rest upon its pleadings to satisfy its burden.[27] Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[28] To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein."[29]

Finally, summary judgment is not a "disfavored procedural shortcut;" on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[30] In responding to a motion for summary judgment, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."[31]

---

[23] *Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997).

[24] *Id.*

[25] *Id.*

[26] *Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 324; *Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

[27] *Anderson*, 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001).

[28] *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 671); *see Kannady*, 590 F.3d at 1169.

[29] *Adams*, 233 F.3d at 1246.

[30] *Celotex*, 477 U.S. at 327 (quoting FED. R. CIV. P. 1).

[31] *Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir. 1988).

**III.     Discussion**

Because Plaintiff has failed to file any response to Defendants' Motion, it is deemed uncontested pursuant to District of Kansas Rule 7.4(b).[32]  That rule states:

> Absent a showing of excusable neglect a party or attorney who fails to file a responsive brief or memorandum within the time specified in D. Kan. Rule 6.1(d) waives the right to later file such brief or memorandum.  If a responsive brief or memorandum is not filed within the D. Kan. Rule 6.1(d) time requirements, the court will consider and decide the motion as an uncontested motion.[33]

This standard is modified in the context of summary judgment analysis: "It is improper to grant a motion for summary judgment simply because it is unopposed."[34]  Under Federal Rule of Civil Procedure 56(e), the Court may deem a fact undisputed where the nonmoving party fails to address it.[35]  That rule also permits the Court to grant summary judgment "if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it."[36]  Plaintiff's response to Defendants' Motion was due on September 23, 2019.  No response has been filed to date.  Consequently, the Court deems undisputed the facts presented in Defendants' Memorandum in Support of their Motion, to the extent they are supported by the record.

---

[32] The Court notes that Plaintiff is proceeding pro se in this matter, requiring the Court to construe his filings liberally and hold them to a less stringent standard than formal pleadings drafted by attorneys. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, Plaintiff's pro se status does not excuse him from complying with the federal and local rules. *Barnes v. United States*, 173 F. Appx. 695, 697–98 (10th Cir. 2006) (citing *Ogden v. San Juan Cty.*, 32 F.3d 452, 455 (10th Cir. 1994); *Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992)).

[33] D. Kan. Rule 7.4(b).

[34] *Thomas v. Bruce*, 428 F. Supp. 2d 1161, 1163 (D. Kan. 2006) (quoting *EEOC v. Lady Baltimore Foods, Inc.*, 643 F. Supp. 406, 407 (D. Kan. 1986)); *see also Issa v. Comp USA*, 354 F.3d 1174, 1177–78 (10th Cir. 2003).

[35] FED. R. CIV. P. 56(e)(2).

[36] FED. R. CIV. P. 56(e)(3).

## A. Exhaustion of Available Administrative Remedies

Defendants argue that Plaintiff's claims are barred because he failed to fully exhaust all available administrative remedies. The Prison Litigation Reform Act (the "PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."[37] "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."[38] The exhaustion requirement also requires proper exhaustion so that "the prison grievance system is given a fair opportunity to consider the grievance."[39] This requires complete compliance with prison grievance procedures.[40]

The uncontroverted evidence demonstrates that Plaintiff failed to exhaust his administrative remedies regarding all allegations in this lawsuit. LCF has a four-step grievance procedure, requiring inmates to do the following: (1) attempt informal resolution, (2) file a grievance report submitted to the appropriate unit team member, (3) submit the grievance to the warden, and (4) submit the grievance to the Secretary of Corrections.[41]

The Court-ordered, uncontested *Martinez* Report indicates that Plaintiff only filed four grievances during his time at LCF.[42] Plaintiff filed two grievances in October 2015.[43] The first

---

[37] 42 U.S.C. § 1997e(a).

[38] *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

[39] *Woodford v. Ngo*, 548 U.S. 81, 93–94 (2006).

[40] *Jones v. Bock*, 549 U.S. 199, 218 (2007).

[41] For a full description of the Kansas state prisoner grievance process, see Kansas Administrative Regulations § 44-15-102. *See also Smith v. Rudicel*, 123 F. Appx. 906, 907 (10th Cir. 2005).

[42] *See* Doc. 41-20.

[43] *Id.*

grievance—AA 20160110—makes no mention of any KDOC officials by name. Instead, Plaintiff merely grieved that his "rescue inhaler was lost by KDOC Staff, who <u>should have to</u> replace it."[44] The second grievance—AA20160150—relates to medical staff at the pill line window allegedly trying to give Plaintiff another inmate's inhaler.[45] Plaintiff's third grievance—AA20170051— refers to "Ms. L. Wildermuth and Mr. Ball" allegedly "refusing to, and or failing to Notarize documents as Requested."[46] None of these three grievances relates to claims in the instant lawsuit.

The fourth and final grievance Plaintiff filed at LCF—which is unnumbered—is the only grievance that could be construed to relate to the instant suit.[47] Though this lengthy grievance makes mention of many individuals Plaintiff believes wronged him, it only references two of the six remaining individual defendants to this lawsuit: Defendant Wildermuth and Defendant Ball.[48] However, this grievance cannot overcome Defendants' affirmative defense of nonexhaustion for two reasons: (1) the grievance was deemed improperly filed, and (2) the grievance did not sufficiently identify what actions taken by Defendants Wildermuth and Ball were being grieved.

Plaintiff has not responded to Defendants' Motion, and accordingly has not challenged Defendants' exhaustion defense. Plaintiff does not provide any explanation regarding the defective nature of his fourth grievance.[49] Even if Plaintiff were able to address this shortcoming, the fourth grievance does not track the specific claims alleged in Plaintiff's

---

[44] *Id.* at 4 (emphasis in original).

[45] *Id.* at 15.

[46] *Id.* at 24 (errors in original).

[47] *See* Doc. 41-21 at 14–25.

[48] *Id.* at 16–25.

[49] *See, e.g.*, *Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1112–1113 (10th Cir. 2007) (concluding that the court was not obligated to examine the prison grievance denials "to see whether [the] grievance was in fact flawed" because the plaintiff failed to address the alleged shortcomings in his grievances).

Amended Complaint. The fourth grievance notes general housing and cell assignment issues, but did not provide Defendants with fair notice of the specific claims presented in this case. Though the grievance does express Plaintiff's dissatisfaction with his treatment, housing assignment, and disciplinary actions, the grievance does not mention the same, specific claims raised in this suit. Additionally, the grievance mentions a variety of other issues that pertain to parties other than those in this suit, giving the impression that Plaintiff was not primarily concerned about the actions of Defendants Wildermuth and Ball.

Based on the grievance records in the *Martinez* Report, the Court finds that Defendants have satisfied their burden for summary judgment of demonstrating that there is no evidence showing Plaintiff fully exhausted available administrative remedies on any of the claims raised in this case. Plaintiff has not produced admissible evidence showing that there is a genuine issue of material fact remaining on this issue. Summary judgment, therefore, is proper on grounds that Plaintiff has not exhausted administrative remedies as required by the PLRA.

### B. *Qualified Immunity*

Even if Plaintiff were able to demonstrate he had fully exhausted his administrative remedies, his claims would still fail on qualified immunity grounds. Qualified immunity protects government officials from individual liability under 42 U.S.C. § 1983 unless their conduct "violates clearly established statutory or constitutional rights of which a reasonable person would have known."[50] As the Tenth Circuit explained in *Rojas v. Anderson*, "because qualified immunity is designed to protect public officials from spending inordinate time and money defending erroneous suits at trial," the qualified immunity defense triggers a modified summary

---

[50] *Schroeder v. Kochanowski*, 311 F. Supp. 2d 1241, 1250 (D. Kan. 2004) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

judgment standard.[51] Once the defense has been properly raised, the initial burden rests on the plaintiff, rather than the defendant; and the plaintiff must "clear two hurdles:" (1) demonstrate that the defendant violated his constitutional or statutory rights; and (2) demonstrate that the right was clearly established at the time of the alleged unlawful activity.[52] The court may decide the appropriate order to consider these issues.[53] Only if the plaintiff clears both hurdles does the burden shift back to the defendant to make the traditional showing that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law.[54]

In determining whether the plaintiff has demonstrated a violation of his constitutional or statutory rights and whether such rights were clearly established at the time, the court views facts and draws reasonable inferences in the light most favorable to the party opposing summary judgment.[55] In *Scott v. Harris*, the Supreme Court held that "this usually means adopting . . . the plaintiff's version of the facts," unless that version "is so utterly discredited by the record that no reasonable jury could have believed him."[56] Moreover, citing to the *Scott* decision, the Tenth Circuit has held that "because at summary judgment we are beyond the pleading phase of the litigation, a plaintiff's version of the facts must find support in the record."[57] In that sense, the Court does not discard the Rule 56 process, but relies upon facts supported by the record, while viewing those facts and reasonable inferences therefrom, in the light most favorable to Plaintiff.

---

[51] 727 F.3d 1000, 1003 (10th Cir. 2013).

[52] *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)); *see also Cox v. Glanz*, 800 F.3d 1231, 1245 (10th Cir. 2015).

[53] *Camreta v. Greene*, 563 U.S. 692, 706–07 (2011).

[54] *Rojas v. Anderson*, 727 F.3d 1003–04 (10th Cir. 2013).

[55] *Scott v. Harris*, 550 U.S. 372, 376–80 (2007).

[56] *Id.*

[57] *Thomson v. Salt Lake City*, 584 F.3d 1304, 1312 (10th Cir. 2009) (internal quotations and citations omitted).

### 1. Eighth Amendment Claims Regarding Defendant Savino

Plaintiff alleges that Defendant Savino violated his Eighth Amendment rights by: (1) instructing Plaintiff to file a sick call before allowing him to be seen for medical treatment, (2) denying him access to an aide after surgery, (3) instructing others to take Plaintiff's wheelchair after surgery, and (4) failing to advise other staff of Plaintiff's medical restrictions. "A prison official's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment."[58] Such a violation can arise when "prison officials prevent an inmate from receiving treatment or deny him access to medical personnel capable of evaluating the need for treatment."[59] The test for deliberate indifference is both objective and subjective. When a plaintiff's theory of liability is based on denying access to care, the plaintiff must show both "substantial harm"—which includes delay leading to lifelong handicap, permanent loss, or considerable pain—and a culpable state of mind in which the official is "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[60]

Plaintiff's claim against Defendant Savino for instructing him to fill out a sick call when Plaintiff believed he needed more immediate medical attention fails for multiple reasons. The fact that Defendant Savino directed Plaintiff to fill out a sick call slip, as required by internal prison procedures, does not show a denial of access to care. As Plaintiff himself explained in his Amended Complaint, other officers instructed Defendant Savino to allow Plaintiff to see medical staff immediately, and she complied. Plaintiff has not identified any harm, and the record

---

[58] *Broadus v. Corr. Health Partners, Inc.*, 770 F. App'x 905, 909–10 (10th Cir. May 7, 2019) (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2009)).

[59] *Id.*

[60] *Id.* (quoting *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006)).

reveals none, that he suffered substantial harm because of this brief delay in treatment. Further, Plaintiff has not demonstrated that Defendant Savino knew of any substantial harm that would occur by instructing Plaintiff to fill out a sick call; nor has he illustrated that a reasonable person in Defendant Savino's position would have believed this instruction was unconstitutional.

Plaintiff also alleges that Defendant Savino denied him access to care by failing to provide him an aide after surgery. Defendant Savino has put forth uncontroverted evidence that she was not authorized to order an aide for an inmate. No reasonable officer in Defendant Savino's position would have believed that her conformity with prison procedure constituted an Eighth Amendment violation.

Plaintiff's claim that Defendant Savino instructed others to take Plaintiff's wheelchair fares no better. Here, Plaintiff has not provided any evidence that Defendant Savino made such an order, nor does he cite any evidence to show that Defendant Savino did so with a culpable mind.

Plaintiff's final Eighth Amendment claim against Defendant Savino—that she failed to adequately advise others of Plaintiff's medical restrictions—also does not rise to the level of a constitutional violation. Beyond pure speculation based wholly on his own unsupported assertions, Plaintiff has failed to put forth evidence that this constituted deliberate indifference, that Defendant Savino was required to relay such information, or that Defendant Savino withheld/misreported this information with a culpable state of mind. Instead, the uncontroverted evidence in the record shows—at most—that Defendant Savino may have made mistakes in relaying Plaintiff's medical information to others. Such mistakes, however, do not constitute

Eighth Amendment violations.[61] None of Plaintiff's allegations against Defendant Savino overcome the bar of qualified immunity.

### 2. *Eighth Amendment Claims Regarding Cell Assignment*

Plaintiff brings general claims against Defendants, alleging that their treatment of him constituted an Eighth Amendment violation because they were deliberately indifferent to his serious medical needs. These claims relate to his cell assignment, and stem from Plaintiff's belief that his cells did not comply with his medical restrictions. Plaintiff alleges that Defendants Nance and Silva placed him in a second-floor cell in the Q-Unit, and that he was exposed to cleaning solutions, dirt, dust, and pollen which aggravated his COPD. Plaintiff also alleges that Defendants Ball and Wildermuth placed him in a cell that did not respect his "no-stairs" medical restriction for a period of three days.

Once again, to state a cognizable Eighth Amendment claim, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."[62] This involves "'both an objective and subjective component.'"[63] The uncontroverted evidence in the record demonstrates that Plaintiff has failed to show Defendants acted with deliberate indifference. By contrast, Defendants have produced evidence that their actions did not pose a risk of serious harm to Plaintiff. The second-floor cell in the Q-Unit was handicap-accessible and therefore complied with Plaintiff's "no-stairs" restriction. Additionally, Defendants have put forth uncontroverted evidence that they could not have been subjectively aware that Plaintiff's cell assignments aggravated his COPD because Plaintiff never informed them of such issues.

---

[61] *See, e.g.*, *Jones v. Hannigan*, 959 F. Supp. 1400, 1405–06 (D. Kan. 1997).

[62] *Estelle v. Gamble*, 429 U.S. 97, 104.

[63] *Requena v. Roberts*, 893 F.3d 1195, 1215 (10th Cir. 2018) (quoting *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005)).

Finally, Plaintiff's own filings state that he was placed in cells that did not comply with his medical restrictions for a brief period of time because all compliant cells were otherwise occupied by inmates who also had medical restrictions; no reasonable person in Defendants' positions would have considered their cell assignments to be constitutional violations. Defendants are entitled to qualified immunity on all claims related to Plaintiff's cell assignment.

### 3. *Retaliation Claims for Plaintiff's Filing of Administrative Grievances*

Plaintiff also alleges that Defendants retaliated against him for exercising his right to file administrative grievances. He contends that Defendants retaliated against him by issuing Disciplinary Reports, keeping him in an MRA cell, and refusing to forward forms he provided them. Retaliation for using the prison grievance process is impermissible.[64] However, to avoid the bar of qualified immunity, Plaintiff must show that Defendants' allegedly retaliatory actions were substantially motivated by his exercise of constitutionally-protected activity.[65] Plaintiff provides no evidence that any of these actions resulted from retaliatory motives. To the contrary, the evidence shows that Plaintiff was ultimately found guilty of the conduct charged in each of the disciplinary reports. The Tenth Circuit has indicated that prisoners cannot maintain retaliation claims based on the issuance of disciplinary reports where that prisoner has been convicted of the underlying improper conduct.[66] Further, Plaintiff's filings with this Court explained that it was his decision—not the Defendants'—to remain in the MRA cell because he did not want to move to general population. Lastly, the uncontroverted facts demonstrate that Defendants did not fail to forward any documents given to them by Plaintiff.

---

[64] *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) (citing *Smith v. Maschner*, 899 F.2d 940 (10th Cir. 1990)).

[65] *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1203 (10th Cir. 2007).

[66] *See Requena v. Roberts*, 893 F.3d 1195, 1211 (10th Cir. 2018) (collecting cases).

### *4. Equal Protection Claims*

Finally, Plaintiff alleges that Defendants Wildermuth and Ball violated his right to equal protection because they assigned him to cells that did not comply with his medical restrictions. He asserts that other inmates with similar medical restrictions were placed in compliant cells. Typically, equal-protection jurisprudence is "concerned with governmental action that disproportionally burdens certain classes of citizens."[67] However, in *Village of Willowbrook v. Olech*, the Supreme Court carved out a "class-of-one" equal-protection claim, holding that a plaintiff may state such a claim by alleging that he "has been treated differently from others similarly situated and that there is no rational basis for the difference in treatment."[68]

Here, Plaintiff fails to allege membership in any identifiable group. He instead insists that other inmates were treated more favorably than he was because they were housed in better cells. Even under the most favorable reading of his pleadings, assuming Plaintiff intends to bring a "class-of-one" claim, Plaintiff has still failed to allege any constitutional violation. In class-of-one equal-protection cases, the plaintiff must demonstrate (1) that other similarly-situated individuals were treated differently than he was, and (2) that there was no rational basis for the differential treatment.[69] Defendants have identified rational bases for all their allegedly differential treatment of Plaintiff, and Plaintiff has not refuted these rational bases.

In sum, Plaintiff cannot overcome the bar of qualified immunity as to any of his claims. There is no evidence that Defendants' actions violated Plaintiff's constitutionally or federally

---

[67] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215–16 (10th Cir. 2011).

[68] 528 U.S. 562 (2000) (per curiam).

[69] *SECSYS, LLC v. Vigil*, 666 F.3d 678, 688–89 (10th Cir. 2012).

protected rights; or that Defendants' actions were "so obviously improper that any reasonable officer would know [they were] illegal."[70]

## IV. Conclusion

Defendants are entitled to summary judgment because Plaintiff has failed to exhaust his administrative remedies as required by the PLRA. Even assuming Plaintiff could overcome Defendants' affirmative defense of nonexhaustion, Defendants would be entitled to qualified immunity.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion to Dismiss, in the Alternative, for Summary Judgment (Doc. 58) is **granted**.

**IT IS SO ORDERED.**

Dated: September 27, 2019

                                                   S/ Julie A. Robinson
                                                   JULIE A. ROBINSON
                                                   CHIEF UNITED STATES DISTRICT JUDGE

---

[70] *Callahan v. Wyandotte Cty.*, 806 F.3d 1022, 1027 (10th Cir. 2015); *see also Estate of Booker v. Gomez*, 745 F.3d 405, 427 (10th Cir. 2014).